# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| UNION PACIFIC RAILROAD COMPANY,<br><br>        Plaintiff,<br><br> v.<br><br>JOEL SACKS, in his Official Capacity as Director, Washington State Department of Labor & Industries,<br><br>        Defendant. | CASE NO. 17-5896 RJB<br><br>ORDER ON DEFENDANT'S MOTION TO DISMISS |

This matter comes before the Court on the Defendant's Motion to Dismiss under Fed. R. Civ. P. 12 (b)(1). Dkt. 8. The Court has considered the pleadings filed in support of and in opposition to the motion, oral argument heard on 8 February 2018, and the file herein.

The Plaintiff, Union Pacific Railroad Company ("Union Pacific"), filed this case to determine whether the portions of Washington law that purport to regulate hours of service, rest periods and/or other breaks apply to railroad employees (collectively referred to as "breaks" for purposes of this order). Dkt. 1. The Washington State Department of Labor & Industries ("Department"), through its director, Defendant Joel Sacks, has now filed a motion to dismiss the

ORDER ON DEFENDANT'S MOTION TO DISMISS - 1

case, arguing that Union Pacific lacks standing to bring this case and the Department has taken no enforcement action against Union Pacific and has no past or pending complaints against it (or any other railroad) regarding breaks and so, the questions raised in this case are not ripe for judicial review. Dkt. 8. For the reasons provided below, the motion (Dkt. 8) should be granted.

## I.     FACTS AND PROCEDURAL HISTORY

### A. BACKGROUND FACTS

Washington Administrative Code ("WAC") 296-126-092, adopted pursuant to Washington's Industrial Welfare Act, RCW 49.12 *et. seq.*, provides,

> (1) Employees shall be allowed a meal period of at least thirty minutes which commences no less than two hours nor more than five hours from the beginning of the shift. Meal periods shall be on the employer's time when the employee is required by the employer to remain on duty on the premises or at a prescribed work site in the interest of the employer.
>
> (2) No employee shall be required to work more than five consecutive hours without a meal period.
>
> (3) Employees working three or more hours longer than a normal work day shall be allowed at least one thirty-minute meal period prior to or during the overtime period.
>
> (4) Employees shall be allowed a rest period of not less than ten minutes, on the employer's time, for each four hours of working time. Rest periods shall be scheduled as near as possible to the midpoint of the work period. No employee shall be required to work more than three hours without a rest period.
>
> (5) Where the nature of the work allows employees to take intermittent rest periods equivalent to ten minutes for each 4 hours worked, scheduled rest periods are not required.

WAC 296-126-092. The Department's Employment Standards Program administers the rule and may enforce it. Dkt. 10, at 2. According to the Employment Standards Program Manager, it exercises its "discretion to investigate complaints based on the strength of the arguments, based

on the availability of Department resources, and based on the availability of alternative forms of relief such as private litigation or collective bargaining procedures." *Id.*

   *1. Emails to the Department about Meal Periods and/or Rest Breaks and Railroads*

On November 2, 2016, the Department's Employment Standards Program received an email, purportedly from an employee of Union Pacific, which read:

> Hello. I work for Union Pacific Railroad and we have been getting told that we are not allowed to take meal periods (30 minutes) during our 12 hr [sic] shifts. They claim they are exempt from state law at Union Pacific. I just want to know what my rights are. I am fearful of losing my job because I am not being allowed a basic human right of nourishment. Thank you.

Dkt. 24-2. In response, on November 3, 2016, Brent DeBeaumont, a Wage and Hour Technical Specialist with the Department, wrote:

> Employees of carriers subject to Part I of the Interstate Commerce Act (railroads and pipelines) are exempt from the Minimum Wage Act in Washington.
>
> However, the Washington meal and rest period regulation (WAC 296-126-092) was not promulgated pursuant to the Minimum Wage Act. This regulation was promulgated pursuant to the Industrial Welfare Act (RCW 49.12). For a list of exemptions from the Industrial Welfare Act, please see this policy: http://www.lni.wa.gov/WorkplaceRights/files/policies/escl.pdf. Please note, there is no exemption for Part I carriers from the Industrial Welfare Act.
>
> Something else to consider: federal law could preempt your employer from various state regulations. To see if this is the case, please contact the U.S. Dep't of Labor, Wage and Hour Division. Their regional office in Seattle can be contacted at 206-398-8039.
>
> Please let me know if you have additional questions.

Dkt. 24-2. On May 9, 2017, BNSF Railway Company, with Union Pacific's "cooperation and approval" (Dkt. 24, at 2), sent the Department a Washington Public Records Act request, seeking documents, advice, opinions, and correspondence "as to the applicability of Washington meal break or rest break time rules to railroads or railroad employees," regarding the "applicability of

ORDER ON DEFENDANT'S MOTION TO DISMISS - 3

Washington meal break or rest break time rules to railroads or railroad employees who have entered into a collective bargaining agreement," "non-privileged internal memoranda or opinions as to the relationship between the federal Hours of Service Law, 49 U.S.C. § 21101-21109, and Washington maximum hours of work, overtime, rest break time, or meal time rules," and "[a]ny documents relating to investigations or enforcement actions against interstate railroads related to Washington meal break or rest break time rules to railroads or railroad employees" (Dkt. 24-1, at 2-3). Union Pacific states that the Department "produced a number of responsive documents," including the above November 2, 2016 email from a Union Pacific employee and the Department's response. Dkt. 24, at 2. The Department has also produced an August 1, 2017 email to the Department from attorney India Bodien which provided:

> I was hoping you might provide some guidance regarding L & I's authority to promulgate and enforce regulations that cover railroad employees. Specifically, I am trying to figure out whether WAC 296-126-092 (4) would apply to railroad employees.
>
> From what I have found so far, it looks like railroads are not excluded from L & I's rule making power. RCW 43.22.270 (4) states that: "The director of Labor and Industries shall have the power, and it shall be the director's duty . . . to, with the assistance of the supervisor of employment standards, supervise the administration and enforcement of all laws respecting the employment and relating to the health, sanitary conditions, surroundings, hours of labor, and wages of employees employed in business and industry in accordance with the provisions of chapter 49.12 RCW." There is no exclusion here for railroads (or railroad employees), nor is there an exclusion under RCW 49.12 (in fact 49.12's declaration states that it pertains to "all employees," RCW 49.12.010). The title of Chapter 296-126 is "Standards of Labor for the Protection of Safety, Health, and Welfare for all Employees in All Occupations Subject to Chapter 49.12 RCW." For these reasons, [i]t would seem that WAC 296-126-092 (4), which was issued by L & I, would protect railroad employees.
>
> However, I am a little confused about the railroad exclusion in RCW 43.22.050 (1). That law states that: "The Director of [L]abor and [I]ndustries shall . . . exercise all the power and perform all the duties prescribed by law in relation to the inspection of factories, mills, workshops, warerooms, stores and buildings, and the machinery and apparatus therein contained, and steam vessels and other vessels operated by machinery, and in relation to the administration and

> enforcement of all laws and safety standards providing for the protection of employees in mills, factories, workshops, and in employments subject to the provisions of Title 51 RCW, and in relation to the enforcement, inspection, certification, and promulgation of safe places and safety device standards in all industries: PROVIDED, HOWEVER, this section does not apply to railroads."
>
> On its face, this particular RCW seems to be less about overall rulemaking authority and more about inspection authority and rulemaking authority with regard to safe places and "safety standards," i.e. the standards of the physical work environment. However, because the law describes "safety standards," an argument could be made that it encompasses WAC 296-126-092 (4), which is a rule issued under the heading "Standards of Labor for the Protection of Safety, Health and Welfare."
>
> Any guidance on these RCWs and whether they exclude or include railroad employees with regard to Chapter 296-126 WAC, and, specifically WAC 296-126-092 (4) would be greatly appreciated.

Dkt. 9, at 3-4. On August 10, 2017, Mr. DeBeaumount responded with:

> My name is Brent DeBeaumont, and I am the Wage and Hour Technical Specialist with the Washington State Department of Labor & Industries. I provide guidance on wage and hour laws and regulation in my role with the department. Maggie Leland forwarded me your inquiry, directly below.
>
> WAC 296-126-092 was promulgated pursuant to the rulemaking directive in the Industrial Welfare Act ("IWA"). To my knowledge, neither the IWA nor the rules promulgated pursuant to the IWA (Chapter 296-126) contain a specific exemption for railroad workers.
>
> A plain reading of the regulation, and the lack of a specific exemption for railroad workers, does indeed contemplate that Washington railroad workers are covered by WAC 296-126-092.
>
> Unfortunately, in my role with the department, I am not familiar with the history or interpretations of RCW 43.22.050.
>
> Thank you again for your inquiry.

Dkt. 9, at 3. According to the Program Manager for the Employment Standards Program, David Johnson (Mr. DeBeaumont's supervisor), this "email is not an official policy position of the Department regarding whether it will enforce its rest break rule against interstate railroads [sic]

ORDER ON DEFENDANT'S MOTION TO DISMISS - 5

companies. It was an informational response to a constituent inquiry and . . . was not a Department order." Dkt. 10, at 2.

Department Program Manager Johnson states that "[t]he Department has taken no position as to whether it will enforce its break rule against interstate railroads." Dkt 10, at 2. He asserts that the Department "has not threatened to enforce its break rule [against] any railroad and has no plans to do so." *Id.* Department Program Manager Johnson states that the "Department has no active cases or pending complaints regarding breaks in interstate railroad employment . . . [and] has no complaints or cases pending regarding interstate railroads on any subject." *Id.* He maintains that "[f]or the past several decades, the Department has no record of past complaints regarding breaks and railroads." *Id.*

2. *Litigation Involving Union Pacific*

Union Pacific filed this case on October 31, 2017. Dkt. 1. Union Pacific seeks a declaration that those portions of the Revised Code of Washington and the Washington Administrative Code "that purport to regulate railroad employee hours of service, rest periods, and/or other breaks in service are preempted, in whole or in part, by federal law . . ." Dkt. 1, at 2. In addition, it seeks injunctive relief "prohibiting the [Defendant] from enforcing the preempted portions of Washington state law with respect to [Union Pacific's] employees." *Id.* In its Complaint, Union Pacific states that it is "currently engaged in collective bargaining with the unions that represent their employees." *Id.,* at 16. The Complaint includes seven counts, the first six counts assert that Washington law regarding breaks is preempted by or violates federal law and Count Seven maintains that the law that gives the Defendant the power to enforce Washington law on breaks, RCW 43.22.050 (1), specifically exempts railroads and so the Defendant "lacks the authority to apply WAC 296-126-092 (4) to railroads." *Id.,* at 17.

On November 6, 2017, Michael L. Logan, individually and on behalf of all others similarly situated, filed a putative class action in Spokane County, Washington Superior Court, asserting that Union Pacific engaged in a "scheme under which it did not compensate piece-rate railroad workers separately and hourly, or at all, for rest periods as required under Washington law." *Logan v. Union Pacific Railroad Company,* Spokane County, Washington Superior Court case number 17204339-1 ("*Logan* putative class action"). Union Pacific removed the *Logan* case to federal court on November 27, 2017, and a motion for remand was noted for consideration on January 26, 2018. *Logan v. Union Pacific Railroad Company,* U.S. District Court for the Eastern District of Washington at Spokane, case number 2:17-cv-0394 TOR, Dkts. 1 and 5. In the putative class action, Mr. Logan seeks damages and a declaration that Union Pacific "willfully violated WAC 296-126-092 (4) by failing to pay Plaintiff and Class Members separate and hourly for rest periods . . . and failing to make retro payments for unpaid rest period pay." *Id.*, Dkt. 1-1, at 9. Mr. Logan also seeks an order requiring Union Pacific to pay all current and future employees "separately and hourly for their rest periods." *Id.* He additionally seeks attorney's fees and costs. *Id*. Mr. Logan is represented by attorney India Bodien, the attorney who wrote to the Department in August of 2017. *Id.*

According to Union Pacific's Senior General Attorney, "[t]o date, Union Pacific has expended substantial resources, including more than $25,000 in fees and costs, defending itself against rest period claims in Washington, and will likely continue to incur additional costs if this controversy is not resolved." Dkt. 24, at 4.

       3. *Litigation Involving BNSF Railway Company*

On November 1, 2017, BNSF Railway Company filed a case in this Court against Defendant Sacks, also seeking a declaration that those portions of the Revised Code of

ORDER ON DEFENDANT'S MOTION TO DISMISS - 7

Washington and the Washington Administrative Code "that purport to regulate railroad employee hours of service, rest periods, and/or other breaks in service are preempted, in whole or in part, by federal law . . ." *BNSF Railway Company v. Sacks*, U.S. District Court for the Western District of Washington, case number 17-5902 RJB, Dkt. 1, at 2. As in this case, in addition, it seeks injunctive relief "prohibiting the [Defendant] from enforcing the preempted portions of Washington state law with respect to [BNSF's] employees." *Id.*

On November 6, 2017, Gregory Neal Gonzales, individually and on behalf of all others similarly situated, filed a putative class action in Franklin County, Washington Superior Court, asserting that BNSF engaged in a "scheme under which it did not compensate piece-rate railroad workers separately and hourly, or at all, for rest periods as required under Washington law." *Gonzales v. BNSF Railway Company,* Franklin County, Washington Superior Court case number 17-2-51180-11 ("*Gonzales* putative class action"). BNSF removed the Gonzales case to federal court on November 22, 2017, and a motion for remand is noted for consideration on January 26, 2018. *Gonzales v. BNSF Railway Company,* U.S. District Court for the Eastern District of Washington at Richland, case number 4:17-cv-5193 TOR, Dkts. 1 and 6. Mr. Gonzales seeks damages and a declaration that Union Pacific "willfully violated WAC 296-126-092 (4) by failing to pay Plaintiff and Class Members separate and hourly for rest periods . . . and failing to make retro payments for unpaid rest period pay." Dkt. 1-1*,* at 15. Mr. Gonzales also seeks an order requiring BNSF to pay all current and future employees "separately and hourly for their rest periods." *Id.* He additionally seeks attorney's fees and costs. *Id.* Mr. Gonzales is also represented by attorney India Bodien, the attorney who wrote to the Department in August of 2017. *Id.*, at 9.

**B. PENDING MOTION**

The Defendant argues that this case should be dismissed because the issues raised are not ripe because the Department has not, and has no plans to, enforce the Washington law on break periods against Union Pacific, and Union Pacific will not be significantly harmed if resolution of these issues are delayed. Dkt. 8. It also asserts that Union Pacific lacks standing to bring this case as it has not suffered an injury-in-fact. *Id.*

Union Pacific responds and argues that the issues are ripe because it already faces enforcement of Washington's rest period regulation due to the *Logan* putative class action, and because Defendant has refused to disavow any intent to enforce the regulation. Dkt. 23. It further asserts that the case is ripe because it would face significant hardship if resolution is delayed. *Id.* Plaintiff maintains that it has standing – it suffered an injury-in-fact because the Department's August 2017 email "led to a class action lawsuit against Union Pacific" – the *Logan* putative class action - subjecting it to significant legal fees, costs and potential damages. *Id.* Union Pacific argues further, that the motion to dismiss should be denied because there are issues of fact as to (a) whether the Defendant has taken a position on the issue of preemption, (b) whether the Defendant has taken a position on the issue of whether WAC 296-126-092 applies to railroads and (c) whether Defendant maintains that it may enforce the regulation against railroads in the future. *Id.* It asserts that, at a minimum, it should be granted leave to conduct jurisdictional discovery on these questions. *Id.*

The Defendant replies, and argues that this case is not ripe because the Department is not going to enforce Washington law regarding breaks against the Plaintiff. Dkt. 31. It provided a clarifying declaration from Mr. Johnson (the Employment Standards Program Manager) who specifically states that the "Department will not enforce its break rule . . . against any interstate

railroad. It may change its position if a final appellate court decision provides that federal law does not preempt WAC 296-126-092." He further states that "[t]he Department has taken no position on whether federal preemption applies and does not intend to take a position on this subject in any private litigation." Dkt. 32, at 1-2. The Defendant asserts that whether the state law is preempted by federal law is an issue that is ripe in the private putative class action lawsuits. *Id.*

## II. DISCUSSION

### A. STANDARD FOR MOTION TO DISMISS UNDER RULE 12 (b)(1)

A complaint must be dismissed under Fed. R. Civ. P. 12 (b)(1) if, considering the factual allegations in the light most favorable to the plaintiff, the action: (1) does not arise under the Constitution, laws, or treaties of the United States, or does not fall within one of the other enumerated categories of Article III, Section 2, of the Constitution; (2) is not a case or controversy within the meaning of the Constitution; or (3) is not one described by any jurisdictional statute. *Baker v. Carr*, 369 U.S. 186, 198 (1962); *D.G. Rung Indus., Inc. v. Tinnerman*, 626 F.Supp. 1062, 1063 (W.D. Wash. 1986); *see* 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1346 (United States as a defendant).

"'Conclusory allegations and unreasonable inferences, however, are insufficient to defeat a motion to dismiss" pursuant to Rule 12 (b)(1). *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017) (*quoting Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007)). Courts "do not assume the truth of legal conclusions merely because they are cast in the form of factual allegations, and, most especially, where [the court's] jurisdiction is at stake, "[a court] cannot construe the complaint so liberally as to extend [its] jurisdiction beyond its constitutional limits." *Id.* Accordingly, when considering a motion to dismiss pursuant to Rule 12 (b)(1), the

1  court is not restricted to the face of the pleadings, but may review any evidence to resolve factual
2  disputes concerning the existence of jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560
3  (9th Cir. 1988), *cert. denied*, 489 U.S. 1052 (1989); *Biotics Research Corp. v. Heckler*, 710 F.2d
4  1375, 1379 (9th Cir. 1983).

A federal court is presumed to lack subject matter jurisdiction until plaintiff establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994); *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). Therefore, plaintiff bears the burden of proving the existence of subject matter jurisdiction. *Stock West*, 873 F.2d at 1225; *Thornhill Publishing Co., Inc. v. Gen'l Tel & Elect. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

**B. CASE OR CONTROVERSY - RIPENESS**

"Article III of the United States Constitution limits federal court jurisdiction to actual, ongoing cases or controversies." *Wolfson v. Brammer*, 616 F.3d 1045, 1053 (9th Cir. 2010)(*internal quotations and citations omitted*). "A case or controversy must exist at all stages of review, not just at the time the action is filed." *Id.* "In the context of a declaratory judgment suit, the inquiry depends upon whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Montana Envtl. Info. Ctr. v. Stone-Manning*, 766 F.3d 1184, 1188 (9th Cir. 2014)(*internal quotations and citation omitted*).

The Defendant's motion (Dkt. 8) should be granted and this case dismissed. Plaintiff has failed to show that there is an existing substantial controversy between it and the Department. The Department clearly states that will not enforce Washington's break laws against the Plaintiff, unless a "final appellate court" finds that federal law does not preempt Washington law, thus

eliminating the need for injunctive relief. Further, the Department states that it takes "no position" on whether federal law preempts Washington law regarding breaks. Accordingly, there is no "substantial controversy" between Plaintiff and the Department on that issue, much less a controversy of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Montana Envtl. Info. Ctr*., at 1188. The Plaintiff asserted at oral argument that the Defendant's motion does not address Count Seven of the complaint. In Count Seven, the Plaintiff maintains that the law that gives the Defendant the power to enforce Washington law on breaks, RCW 43.22.050 (1), specifically exempts railroads and so the Defendant "lacks the authority to apply WAC 296-126-092 (4) to railroads." *Id.,* at 17. Plaintiff fails to explain, or make any showing, that this claim somehow creates a "substantial controversy" between the Plaintiff and the Defendant. The Plaintiff also asserted at oral argument that the class action lawsuit deals with only a subset of workers, and that a ruling in this case would deal with all railroad workers. The Plaintiff does not show how the fact that there is a "substantial controversy" over whether federal preemption applies to some of its workers in the Eastern District of Washington case, in any manner creates a "substantial controversy" in this case.

Moreover, "[r]ipeness has both constitutional and prudential components." *Wolfson*, at 1058. Each will be considered.

### 1. Constitutional Component of Ripeness

In regard to the constitutional component, "[r]ipeness and standing are closely related because they originate from the same Article III limitation." *Montana Envtl. Info. Ctr. v. Stone-Manning*, 766 F.3d 1184, 1188 (9th Cir. 2014). "The constitutional component of ripeness overlaps with the 'injury in fact' analysis for Article III standing." *Wolfson*, at 1058. "Whether framed as an issue of standing or ripeness, the inquiry is largely the same: whether the issues

presented are definite and concrete, not hypothetical or abstract." *Id.*; *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000).

Union Pacific points to two injuries it asserts make this case ripe: the Department's possible future enforcement of Washington law regarding breaks against it and being forced to defend itself in the *Logan* putative class action lawsuit.

### a. Future Enforcement by the Department

An issue to be addressed is whether Union Pacific has identified a "legally protected interest" that is concrete and particularized and actual or imminent regarding the Department's enforcement of Washington law on breaks and meal periods against it. Union Pacific is not now subject to an enforcement action by the Department, so, it raises a pre-enforcement challenge.

Neither the "mere existence of a proscriptive statute" nor a "generalized threat of prosecution" satisfies the "case or controversy" requirement. *Wolfson,* at 1058. For a pre-enforcement "claim to be ripe, the plaintiff must be subject to a genuine threat of imminent prosecution." *Id*. When evaluating whether a claimed threat of prosecution is genuine, courts consider: "(1) whether the plaintiff has articulated a concrete plan to violate the law in question; (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings; and (3) the history of past prosecution or enforcement under the challenged statute." *Id*.

As to the first factor, there is no dispute that Plaintiff is violating, and has no plan to comply with, Washington's law on breaks.

As to the second factor, regarding warnings or threats, the Defendant specifically states that the "Department has not threatened to enforce its break rule to Union Pacific or any other railroad and has no plans to do so." Dkt. 10. It also clarifies in a second declaration filed with

ORDER ON DEFENDANT'S MOTION TO DISMISS - 13

the reply: "This means that the Department will not enforce its break rule . . . against any interstate railroad. It may change its position if a final appellate court decision provides that federal law does not preempt WAC 296-126-092." Dkt. 32, at 1-2. The prosecuting authorities, then, have not "communicated a specific warning or threat to initiate proceedings" and have now disavowed any intention of enforcing the statutes against the Plaintiff. Plaintiff's argument, that the Defendant has left the door open for some kind of future enforcement, is speculative, at best, and depends on possible actions by third parties that could result in a change in the law. The Plaintiff has failed to make a showing as to this factor.

The final factor to be considered as to whether this case is constitutionally ripe also cuts against Plaintiff: the Defendant has never prosecuted a railroad under the relevant statutes or regulations. Plaintiff's inability to point to any history of prosecutions by the Defendant "undercuts [its] argument that [it faces] a genuine threat of prosecution." *San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1128 (9th Cir. 1996). "[A] plaintiff must have a plausible and reasonable fear of prosecution." *Wolfson*, at 1062. The Plaintiff has not shown that it reasonably fears enforcement by the Department.

*b. Defending the Logan Putative Class Action Lawsuit*

To establish injury in fact, and meet the constitutional requirements for ripeness, "a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), *as revised* (May 24, 2016).

An issue to be addressed, then, is whether Union Pacific has shown the Department invaded a "legally protected interest" that is concrete and particularized and actual or imminent as it relates to the Plaintiff having to defend itself in the *Logan* putative class action. Plaintiff

argues that by "taking a position that is directly contrary to Union Pacific's interests . . . [the] Defendant has already engendered enforcement actions by third parties," and, so, the Plaintiff maintains the controversy is ripe between the Plaintiff and the Department. Dkt. 23. Plaintiff fails to identify the "legally protected interest" invaded. It does not cite any cases that support its position that Mr. DeBeaumount's August 10, 2017 email to a lawyer violated a "legally protected interest" for pointing out that the Washington statute did not specifically exempt railroads and for failing to include a paragraph that stated the state law **may** be preempted by federal law (as he did in a prior email).

Plaintiff cites to *Gray v. City of Valley Park*, 567 F.3d 976 (8th Cir. 2009) where, after noting that the city intended to enforce an ordinance against them, the Eighth Circuit found that the plaintiffs, who had a "well founded fear that the law would be enforced against them," had standing to challenge the ordinance. The Eighth Circuit in *Gray* noted that it was not necessary to have a "specific threat of enforcement;" unlike in the Ninth Circuit, which requires a "specific warning or threat to initiate proceedings" from the authorities, *Wolfson,* at 1058. The *Gray* case is not helpful for Plaintiff.

The Plaintiff cites to *D'Imperio v. United States,* 575 F. Supp. 248, 251 (D.N.J. 1983) for the proposition that "a litigant possessing a real and immediate fear that a 'private party may seek to compel enforcement of a law may bring suit under the Declaratory Judgment Act.'" Dkt. 23, at 7. The full sentence from this non-binding out of circuit district court case, added, "[n]evertheless, not everyone who fears that a government or agency or private party may seek to compel enforcement of a law may bring suit under the Declaratory Judgment Act." This case does not support Plaintiff's assertions.

ORDER ON DEFENDANT'S MOTION TO DISMISS - 15

Plaintiff argues that this case is like *Yinguez v. Arizona,* 939 F.2d 727 (9th Cir. 1991). In that case, Yinguez, a state worker, sued various state officials, including the governor, to stop enforcement of a state constitutional amendment (which was passed by ballot initiative) declaring English to be the official language of the state, and requiring government officials to "act only in English." The district court dismissed all the state officials except the governor pursuant to the 11th Amendment, and held that controversy was ripe between Yinguez and the governor, and that the amendment was unconstitutional. *Id.,* at 729-730. The governor, who publically opposed the amendment, immediately declared she would not appeal. *Id.,* at 730. One of the primary campaigners for the initiative, Robert Park and his organization, moved to intervene to prosecute the appeal. *Id.* The district court denied his motion. *Id.* The Ninth Circuit reversed the district court and held that as the primary campaigner for the initiative, the organization had standing, and due to the private right of action in the initiative (and assurances from the state attorney general that they would defend the initiative), Mr. Park had standing to prosecute the appeal. *Id.* The Plaintiff in this case asserts that "the same principle should apply here." Dkt. 23. Plaintiff misapplies the case. The private litigants in the *Logan* putative class action are in the same position as Mr. Park – they have an active interest in whether the Washington statutes are preempted by federal law. The Department has specifically stated that it "takes no position" on the preemption issue. There is no live issue between the Department and the Plaintiff.

Lastly, Plaintiff points to *Bland v. Fessler,* 88 F.3d 729 (9th Cir. 1996), arguing that "an action against a government entity may eliminate the risk that a statute could be inappropriately enforced in private litigation," and so they have standing. Dkt. 30. The case does not support Plaintiff's contention that the case is ripe here. In examining whether the plaintiff had standing

in *Bland*, the Ninth Circuit noted that just because private litigation was possible to redress an injury did not mean that standing did not lie against the government to challenge the statute that could be enforced in private litigation. The *Bland* court did not find that just because private litigation had been instituted, there was standing against the government to challenge a statute, especially where there is no intention by the government to enforce a statute itself. The case does not help Plaintiff.

Plaintiff has not identified a definite, concrete injury for purposes of the constitutional component of ripeness. The Defendant argues that the Plaintiff does not meet the prudential component of ripeness, either.

### 2. Prudential Component of Ripeness

To evaluate the prudential component of ripeness, two considerations are weighed: "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Wolfson*, at 1060 (*internal quotation marks and citations omitted*). "A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Id.* In regard to the "hardship requirement, a litigant must show that withholding review would result in direct and immediate hardship and would entail more than possible financial loss." *Id.*

The Plaintiff has failed to show that this court's failure to determine whether Plaintiff is partially exempted from the state law, or whether the state law is preempted by federal law, "would result in direct and immediate hardship and would entail more than possible financial loss." *Wolfson,* at 1060. The prudential component of ripeness is not met here.

**C. STANDING**

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1160 (9th Cir. 2017). "At an irreducible constitutional minimum, standing requires the party asserting the existence of federal court jurisdiction to establish three elements: (1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent; (2) causation; and (3) a likelihood that a favorable decision will redress the injury." *Wolfson,* at 1056 (*citing Lujan,* at 560-61).

### 1. Legally Protected Interest

"To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo,* at 1548.

As above, Union Pacific points to two injuries: future possible enforcement of Washington law on breaks and meal periods against it and the *Logan* putative class action lawsuit. It has failed to show an injury in fact as to either of these "injuries." Even if the money spent to defend the class action lawsuit was a sufficient injury, Plaintiff still does not have standing, as explained below.

### 2. Causation

The causation "requirement is only implicated where the concern is that an injury caused by a third party is too tenuously connected to the acts of the defendant." *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961, 975 (9th Cir. 2003).

Plaintiff has failed to demonstrate that their alleged economic injury is "fairly traceable" to the Department's conduct to show causation. *San Diego Cty. Gun Rights Comm. v. Reno*, 98

F.3d 1121, 1130 (9th Cir. 1996). To the extent that Plaintiff asserts that the Department's employee's statement that "[a] plain reading of the regulation, and the lack of a specific exemption for railroad workers, does indeed contemplate that Washington railroad workers are covered by WAC 296-126-092," coupled with his failure to include language regarding the possibility of federal pre-emption in the email to the attorney, caused Plaintiff to get sued, it has not established causation. The injury complained of – having to defend a class action law suit – is only tenuously connected to the acts of the Department, particularly in light of Mr. DeBeaumont's later statement that he was "not familiar with the history or interpretations of RCW 43.22.050," a statute which may prevent the Department from enforcing the regulation against railroads (although that is not clear), and in light of the Department's clearer position now. Plaintiff's economic injury from having to defend itself in the class action "does not satisfy the requirements of Article III because it is the result of the independent action of some third party not before the court." *San Diego Cty. Gun Rights Comm.,* at 1130.

The Plaintiff has failed to make a showing on the first two requirements. There is no injury for the Court to redress, and no cause by the Defendant shown. The third requirement of standing, redressability, is moot without an injury to redress.

**D. ADDITIONAL DISCOVERY**

Plaintiff argues that further discovery is warranted into the following: "(a) whether the Defendant has taken a position on the issue of preemption, (b) whether the Defendant has taken a position on the issue of whether WAC 296-126-092 applies to railroads and (c) whether Defendant maintains that it may enforce the regulation against railroads in the future." Dkt. 23. Included with the Department's reply, is a second declaration from Mr. Johnson, who states that the Department "takes no position" on preemption. Dkt. 32, at 2. The original declaration from

Mr. Johnson states that Mr. DeBeaumont's email was not official policy or departmental order. Dkt. 10, at 2. As to the final issue on which Plaintiff seeks discovery, Mr. Johnson's supplemental declaration states that:

> In my previous declaration, I stated the Department has not threatened to enforce its break rule to BNSF or any railroad and has no plans to do so. This means that the Department will not enforce its break rule, Washington Administrative Code § 296- 126-092, against any interstate railroad. It may change its position if a final appellate court decision provides that federal law does not preempt WAC 296-126-092. It is speculative to think this would occur and whether the Department would allocate its limited resources to an enforcement action.

Dkt. 32, at 2. Plaintiff provides no reason that it should not give full credit to defendants' declaration. No further discovery is warranted and the case should be dismissed.

**E. CONCLUSION**

There is no case or controversy between the Defendant and the Plaintiff. The Court does not issue advisory opinions. The motion to dismiss should be granted and the case closed.

### III. ORDER

Therefore, it is hereby **ORDERED** that:

- The Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12 (b) (Dkt. 8) **IS GRANTED;** and

- This case **IS DISMISSED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 13th day of February, 2018.

*[signature]*

ROBERT J. BRYAN
United States District Judge